UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MARY COX, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| v. | ) | |
| | ) | |
| FMK METALS LLC, and | ) | |
| MICHAEL MELNICK | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Mary Cox ("Cox") states as her Complaint against Defendants FMK Metals LLC ("FMK") and Michael Melnick ("Melnick") (FMK and Melnick are collectively hereinafter referred to as the "Defendants") as follows:

## PARTIES

1. Plaintiff Cox is a resident and a citizen of Georgia.

2. Defendant FMK is an Illinois limited liability company with its principal place of business located at 2405 Essington Road Suite B, Joliet Illinois 60435. FMK's member is Lynette Melnick who is a resident and citizen of the state of Illinois. FMK, therefore, is a citizen of the state of Illinois.

3. Defendant Melnick resides in and is a citizen of Illinois. Defendant Melnick holds himself out as the President of FMK.

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 based upon the complete diversity of citizenship of the parties and the amount in controversy exceeding the jurisdictional minimum of $75,000. Venue is proper in this District, *inter alia*, pursuant to 28 U.S.C. § 1391,

because this case arises out of actions that occurred, at least in substantial part, within this Judicial District and the Defendants reside here.

## FACTS

5. In mid-2014, Defendant Melnick solicited Mary to make an investment with him and FMK. FMK was in the salvage business and would buy catalytic converters and resell the metal and other parts from those products (the "FMK Business").

6. As such, in or around June 2014, Melnick told Mary that in exchange for $75,000 he and FMK would split on an equal basis the profit generated from FMK Business.

7. At this time, Melnick told Mary that he "guaranteed" that in exchange for Mary providing the $75,000, he and FMK would pay Mary a minimum of $1,500 per week (each Friday) as her share of the profit. He also assured her that anytime she wanted, he would return the initial $75,000 to her

8. Cox reposed in Melnick a great deal of trust and confidence because of his claimed ability to invest her retirement savings. Because she trusted Melnick, Cox invested $75,000 with him and FMK. Indeed, her trust was so great in him that she did not request anything in writing at this time to confirm Melnick and FMK's investment of her retirement assets.

9. Initially, and for many weeks, Melnick/FMK complied with Melnick's promise and made the guaranteed weekly $1,500 payments to Mary.

10. As Mary came to trust Melnick even more, in December 2014, she made an additional investment of $50,000 with him and FMK after Melnick told her that such money was needed to purchase products for the FMK Business.

11. In December 2014, Mary confirmed (and Melnick agreed) to some of the basic terms of their agreement in an email (attached as Exhibit A) that provided in part that:

(a) Cox "made an initial investment" of $75,000 and was now providing an additional $50,000.

(b) "If required, you agree to return all monies upon my request..."

(c) "These funds will be used to purchase converters and the profits from these purchases will be paid to me on a weekly basis. "

(d) "If something happens, and this investment is lost, you agree to personally be held responsible for repayment to me of the $125,000. "

12. Melnick again confirmed that if at any time Cox wanted her investment back, it would be returned. Indeed, he specifically confirmed that even if she wanted the money returned a week after the investment was made, he and FMK would provide it to her.

13. In January 2016, Melnick told Cox that he and FMK needed a $20,000 loan and that this loan would be repaid in one week. As such, Cox provided Melnick and FMK $20,000 in January 2016.

14. Melnick and FMK have stopped paying Cox the guaranteed minimum $1,500 per week.

15. Despite demands for repayment being made, Melnick and FMK have not repaid the $125,000 investment or the $20,000 loan.

16. On March 24, 2016, Melnick confirmed via text message that he owes Cox a minimum of $145,000 pursuant to the following email:

> Mike you do agree that you owe me at least the 125000 plus the 20000 I Loaned u. U know u owe me profit that you haven't paid since 12:/30/2015 . I have been very patient I think
>
> Delivered
>
> That is correct. On the profit part the last sheet I gave you is owed. There has been some minuses that I have called Bs on. Bottom line they have no money it's been a horrific battle.

17. Cox has made repeated demands upon Defendants, both personally and through legal counsel, for the return of her money and the requests have been rejected.

18. Melnick has previously had a judgment entered against him for over $2 million for, among other claims, fraud associated with the sale of scrap catalytic converters. *See*, *Catmet, Inc. at al v. Michael Melnick* et al, 2014 IL App (1st) 111460-U. At the time he was professing his experience and grooming the Plaintiff to trust him, he failed to disclose this judgment or his previous finding of fraud.

## COUNT I
## Breach of Contract

19. Plaintiff repeats, realleges and incorporate by reference Paragraphs 1-18, as if fully set forth herein.

20. The Defendants entered into a legally binding and enforceable contract or contracts to (a) pay a minimum of $1500 per week to the Plaintiff, (b) return her $125,000 investment upon request, and (c) repay $20,000 within one week of when $20,000 was provided by Plaintiff to Defendnats.

21. Defendant Melnick has acknowledged that he owes $145,000 to the Plaintiff.

22. The Defendants breached their contract(s) with the Plaintiff. Accordingly, Plaintiff has been damaged.

## COUNT II
## Unjust Enrichment
### (Brought in the alternative to the breach of contract claim.)

23. Plaintiff repeats, realleges and incorporate by reference Paragraphs 1-18, as if fully set forth herein.

24. The Defendants requested $145,000 from the Plaintiff. The Plaintiff provided this amount of money to the Defendants. This money provided a benefit to the Defendants.

25. The Defendants' retention of this financial benefit violates the fundamental principles of justice, equity, and good conscience in that they would be taking advantage of a person (the Plaintiff) who provided money with the reasonable expectation that she would be able to have the money returned.

26. As a result, the Plaintiff has been damaged.

## COUNT III
## Breach of Fiduciary Duty
### (Against Melnick)

27. Plaintiff repeats, realleges and incorporate by reference Paragraphs 1-18, as if fully set forth herein.

28. Melnick owed a fiduciary duty to the Plaintiff because she had complete trust and confidence in him to invest and manage a significant portion of her retirement assets. Melnick in fact assured Plaintiff of his ability to successfully invest her money and then assumed complete management and control over a significant portion of her retirement funds. Plaintiff's trust in Melnick was so great that she never required any formal written agreement to be signed by him.

29. Utilizing the trust and confidence reposed in her, Melnick requested $145,000 from the Plaintiff. The Plaintiff provided this amount of money to the Defendants. This money provided a benefit to the Defendants.

30. Melnick breached his fiduciary duty because he told the Plaintiff that the $1,500 weekly payments were "guaranteed" when he in fact knew that was the case. He also failed to disclose that he was not trustworthy and had, in fact, been found guilty of fraud and had a judgment entered against him for millions of dollars in the same business as that which he was claiming was guaranteed.

31. As a direct and proximate result, the Plaintiff has been damaged in that she has lost the sums of money alleged herein.

## COUNT IV
## Illinois Securities Act

32. Plaintiff repeats, realleges and incorporates by reference Paragraphs 1-18, as if fully set forth herein.

33. Upon information and belief, Melnick was not registered to sell securities in the state of Illinois under the Illinois Securities Act or otherwise.

34. The Illinois Securities Act defines a "Security" in part as "any … investment contract, …right or royalty, … or any certificate of interest or participation in…, guarantee of… any of the foregoing." 815 ILCS 5/2.1

35. Defendants violated the Illinois Securities Act, including, *inter alia,* section 5/12 (815 ILCS 5/12) which provides in part:

"It shall be a violation of the provisions of this Act for any person:

A. To offer or sell any security except in accordance with the provisions of this Act.

B. To deliver to a purchaser any security required to be registered under Section 5, Section 6 or Section 7 hereof unless accompanied or preceded by a prospectus that meets the requirements of the pertinent subsection of Section 5 or of Section 6 or of Section 7.

C. To act as a dealer, internet portal, salesperson, investment adviser, or investment adviser representative, unless registered as such, where such registration is required, under the provisions of this Act.

\*\*\*

F. To engage in any transaction, practice or course of business in connection with the sale or purchase of securities which works or tends to work a fraud or deceit upon the purchaser or seller thereof.

G. To obtain money or property through the sale of securities by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

\*\*\*

I. To employ any device, scheme or artifice to defraud in connection with the sale or purchase of any security, directly or indirectly.

36. Accordingly, Plaintiffs should be awarded damages, including attorneys' fees.

Wherefore, the Plaintiff Mary Cox requests judgment in her favor in an amount to be proven at or before trial, for all relief to which she is entitled under the law, and an award of her reasonable attorney fees under the Illinois Securities Act.

**Plaintiff Demands a trial by jury.**

Dated: March 25, 2016　　　　　　　　　　　　Respectfully submitted,


　　　　　　　　　　　　　　　　　　　　　　By:/s/ David J. Fish_____
　　　　　　　　　　　　　　　　　　　　　　One of Plaintiff's Attorneys


David Fish
Kimberly Hilton
The Fish Law Firm, P.C.
200 E. 5th Avenue, Suite 123
Naperville, IL 60565
(630) 355-7590
dfish@fishlawfirm.com
khilton@fishlawfirm.com